IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN K. DEBOSSCHERE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 10 C 5450 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Brian K. Debosschere seeks review of the Commissioner of Social Security's decision denying his application for Social Security Disability Insurance benefits. Debosschere has moved for summary judgment, asking the Court to award him benefits or remand the case for further consideration. In response, the Commissioner seeks a judgment upholding the denial of benefits. For the reasons stated below, the Court denies Debosschere's motion, grants the Commissioner's motion, and affirms the denial of benefits.

### Facts

Debosschere is a forty-five year old man with fourteen years of education. He has not worked since August 2007. Before his most recent job as a carpenter and repair worker from February to August of 2007, Debosschere worked as a firefighter, building inspector, and carpenter.

Debosschere's injury history dates back to October 2002, when he allegedly first

hurt his back and received conservative treatment, including epidural injections, for the next nine months. In September 2003, Dr. Lorenz, an orthopedic surgeon, performed a spinal surgery that included decompressive laminectomy at L5, nerve root decompression at L4-L5, discectomy at L4-L5, and spinal fusion at L3-L5. When Debosschere's back pain did not subside after the surgery, Dr. Lorenz performed a second surgery on February 14, 2005. On this occasion, Dr. Lorenz performed hardware removal, laminectomy revision, and screw fixation, and he extended the spinal fusion to L5-S1.

Debosschere eventually stopped working due to continued back pain. He attempted to return to work in February 2007 but stopped once again in August 2007.

On July 11, 2008, Debosschere applied for disability insurance benefits, claiming that he had become disabled on August 15, 2007. He alleged disability due to a broken back and tail bone, spinal fusion, a slipped disk, nerve damage, and arthritis.

Debosschere's treating physician Dr. John Benages examined him on July 21, 2008. With regard to Debosschere's back, Dr. Benages reported that Debosschere was experiencing pain in his lower back and legs from "lifting a heavy object." AR 281. His symptoms were aggravated by extension, flexion, and lifting. Dr. Benages noted in his report that he advised Debosschere to apply for Social Security disability benefits "because in my opinion he will never be able to perform any heavy lifting as a result of his chronic back conditions and previous surgery." AR 282.

On August 18, 2008, Debosschere's surgeon Dr. Lorenz examined him and also advised him to apply for disability benefits. Dr. Lorenz noted in his report that Debosschere could not walk for three blocks without experiencing severe pain that

would, in turn, require him to stop and sit for thirty minutes. Dr. Lorenz also stated that Debosschere could only stand for thirty minutes at a time and needed to take a break twice a day to lie down for ten to fifteen minutes. He further concluded that Debosschere had improved as much as was possible and required no further surgical intervention. In his report, Dr. Lorenz stated that Debosschere was "permanently and totally disabled from any gainful employment." AR 395.

In September and October of 2008, two state agency physicians, Dr. Dow and Dr. Arjmand, reviewed Debosschere's medical records. Dr. Dow concluded that Debosschere could perform a range of light work, and Dr. Arjmand concluded that he could perform a range of sedentary work.

The Social Security Administration (SSA) denied Debosschere's application for benefits, both initially and on reconsideration. After these denials, an Administrative Law Judge (ALJ) conducted an evidentiary hearing.

At the hearing, Debosschere testified that he had stopped working because the pain was too great. He testified that he currently had lower back pain that radiated down his right leg, as well as stiffness and numbness in the lower back and numbness and a tingling sensation in his right calf. He said his pain averaged seven on a scale of one to ten and got as high as ten. He testified that the pain was sometimes so serious that he could not get up out of bed. The last such episode he had experienced was about a month before the hearing and lasted for a week.

Debosschere testified that he was not undergoing treatment other than at-home exercise and that his doctor had told him that was all he could handle. He took prescribed medications (including Vicodin) as well as over-the-counter Aleve to control

the pain and that the pain interrupted his sleep nightly every thirty minutes.  The medication, he stated, made him drowsy during the day and required him to take hour-long naps.

At the hearing, Debosschere stated that he could walk about two blocks, stand for fifteen minutes, and sit for fifteen minutes but needed to constantly shift his position.  He testified that he has trouble stooping, kneeling and twisting his torso, and reaching.  He was not, however, using a cane or any other assistive device while walking.

Debosschere testified that he is able to drive, shop for groceries, and do some small household chores such as laundry, dusting, and dishes.  He also attends his son's baseball games but cannot sit through an entire game.

Vocational expert James Radke testified that, although physically limited, Debosschere could still perform the jobs of receptionist, general office clerk, and hand packer, which number approximately 7,700 in the regional economy.

**Definition of disability**

The Social Security Act defines disability as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A five-step sequential evaluation process is used to determine whether a claimant is disabled:

> The first step considers whether the applicant is engaging in substantial gainful activity.  The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement.  The third step compares the impairment to a list of impairments that are considered conclusively disabling.  If the

4

impairment meets or equals one of the listed impairments, then the
applicant is considered disabled; if the impairment does not meet or equal
a listed impairment, then the evaluation continues. The fourth step
assesses an applicant's residual functional capacity (RFC) and ability to
engage in past relevant work. If an applicant can engage in past relevant
work, he is not disabled. The fifth step assesses the applicant's RFC, as
well as his age, education, and work experience to determine whether the
applicant can engage in other work. If the applicant can engage in other
work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (internal quotation marks and citation omitted).

## The ALJ's decision

On October 5, 2009, the ALJ determined that Debosschere was not disabled and denied his claim for benefits. The ALJ summarized the evidence, including Debosschere's testimony and the opinions of Dr. Benages and Dr. Lorenz.

The ALJ found that Debosschere's testimony was "not persuasive." AR 16. She stated that the record did not document his testimony that he had to take hour-long naps, though Debosschere had reported to doctors that he had to lie down for ten to fifteen minutes daily. The ALJ also stated that Debosschere had never reported to his doctors that he had any side effects from his medications.

The ALJ also found that Debosschere's report of his daily activities supported a finding that he was "capable of performing work requiring a sedentary level of exertion." AR 16. The fact that he had to change positions while sitting would not prevent him from performing such work.

With regard to Debosschere's back pain, the ALJ noted that he had sought treatment only infrequently after his second surgery. When he did seek treatment, it was not due to chronic pain but rather because he had done something (such as lifting

5

something heavy) that had exacerbated his symptoms. The ALJ also took note of the fact that no functional capacity evaluation had been performed to document his claims of physical limitations.

The ALJ also noted that Debosschere had testified that he had received unemployment benefits from the fourth quarter of 2007 through the second quarter of 2008. She stated that "[w]hen receiving unemployment benefits, an individual is certifying readiness, willingness, and ability to work, and that the individual is actively looking for work." The ALJ further noted that Debosschere had testified that he had looked for work using his computer. She found that the fact that Debosschere "collected [unemployment benefit] payments creates the inference that he has not been truthful to either the State or the Social Security Administration." AR 17. It appears that in making this finding, the ALJ was referring to the fact that Debosschere's disability benefit application contended he was unable to work, which was inconsistent with the implicit or explicit representation, made to obtain unemployment benefits, that he was able to work.

The ALJ summarized Dr. Benages's opinion and found that it was entitled to some weight, but only to the extent it showed that Debosschere could not perform work at a heavy level of exertion. She found, however, that Dr. Benages "appears to have conflated the definition of disability . . . with the claimant's inability to perform his past work," specifically work at a heavy exertional level. AR 17.

With regard to Dr. Lorenz, the ALJ noted that he had examined Debosschere only three times over three years and had not documented any signs or symptoms in his report. The ALJ found that Dr. Lorenz had "equated 'disabled' with 'decreased

6

functional capacity." AR 17. The information on which Dr. Lorenz relied, the ALJ found, was supplied entirely by Debosschere and was unsupported by an objective evaluation. As a result, the ALJ gave Dr. Lorenz's opinion "no weight." AR 18.

The ALJ gave the state agency doctors' conclusions "[l]ittle weight." She stated that "evidence added at the hearing . . . indicated the claimant was more limited than either consultant had assessed him." AR 18.

The ALJ found that Debosschere had not engaged in substantial gainful activity since 2007; had a severe impairment that significantly limited his ability to work; but did not have an impairment or combination of impairments that met or medically equaled a listed impairment. She further found that Debosschere could not perform his past work but had the capacity to perform sedentary work with a number of limitations. Finally, the ALJ found that given his age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers that he could perform. For this reason, the ALJ found that Debosschere was not disabled.

After the SSA's Appeal Council declined review, the ALJ's decision became the final decision of the Commissioner of Social Security.

## Discussion

A court must uphold the Commissioner's decision if the ALJ's findings are supported by substantial evidence and no error of law occurred. 42 U.S.C. § 405(g); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Although the court must "do more than merely rubber stamp" the decision of the ALJ, *Ehrhart v. Sec'y of Heath and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992), reversal is appropriate only if "the evidence compels reversal, not merely because the evidence supports a contrary decision."  *Jones v. Barnhart*, 189 F. Supp. 2d 806, 808 (N.D. Ill. 2002).

The Court, of course, reviews the entire record of the proceedings.  *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985).  That said, it is inappropriate for the Court to "decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled."  *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

On the other hand, the ALJ's decision must be based on "fair consideration of all of the evidence presented."  *Stein v. Sullivan*, 892 F.2d 43, 47 (7th Cir. 1989).  The decision "must build an accurate and logical bridge from the evidence to her conclusion."  *Dixon*, 270 F.3d at 1176.

Debosschere's sole argument is that the ALJ failed to accord adequate weight to Dr. Lorenz's opinion that Debosschere was "permanently and totally disabled from any gainful employment."  The Commissioner responds that Dr. Lorenz's opinion lacked support by objective medical findings, was inconsistent with other record evidence, and appeared to be based primarily on Debosschere's own subjective complaints, and thus the ALJ's rejection of the opinion was justified.

A treating physician's opinion that is consistent with the record is generally entitled to controlling weight.  20 C.F.R. § 404.1527(d)(2);*Schaaf v. Astrue*, 602 F.3d

8

869, 875 (7th Cir. 2010). Specifically, a treating physician's opinion is entitled to controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). An ALJ who rejects a treating physician's opinion must provide a sound explanation. *Id.*; *Jelinek v. Astrue*, --- F.3d ---, 2011 WL 5319852, at *5 (7th Cir. Nov. 7, 2011).

The ALJ provided a sufficient basis for rejecting Dr. Lorenz's opinion that Debosschere was disabled. Though Dr. Lorenz undeniably had treated Debosschere extensively – having performed two spinal surgeries on him – his August 2008 opinion that Debosschere was disabled as of that date was based entirely on Debosschere's own statements regarding his limitations and was not supported by any objective findings or testing.

Indeed, the brief examination that Dr. Lorenz performed suggested Debosschere was not disabled within the meaning of the Social Security law and regulations. He had full strength in his lower extremities, negative straight leg raising tests bilaterally, and no tingling down the leg with straight leg raising. In addition, there is nothing in Dr. Lorenz's records indicating that he conducted any evaluation to determine Debosschere's functional capacity.

In addition, and probably more importantly, Dr. Lorenz's conclusion in his report that Debosschere was "totally disabled from any gainful employment" does not appear to have been premised on an understanding regarding what it would take for Debosschere to be able to perform light or sedentary work. A claimant is not entitled to disability benefits simply because his physician states that he is "disabled." *Dixon*, 270

9

F.3d at 1177. Governing regulations provide that an ALJ may consider the treating physician's level of understanding of the SSA's disability programs and "evidentiary requirements." 20 C.F.R. § 404.1527(d)(6). The ALJ reasonably relied on the fact that that Dr. Lorenz's opinion did not reflect an understanding of the governing definition of disability. Specifically, it was not unreasonable for the ALJ to conclude that Dr. Lorenz appeared to incorrectly (as a legal matter) equate disability with decreased functional capacity.

In sum, the ALJ gave "legitimate reasons constituting good cause" for rejecting Dr. Lorenz's opinion in its entirety. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Because Debosschere's sole argument is that the ALJ was unwarranted in rejecting Dr. Lorenz's opinion, the Commissioner is entitled to summary judgment.

Following review of the parties' briefs, the Court requested further briefing on the question of whether the evidence supported the ALJ's finding that Debosschere's condition did not meet or equal a listed impairment (an issue that Debosschere had not raised). The Court is persuaded by defendant's argument that the record does not reflect that, at the time of the hearing, Debosschere met all of the requirements of Listing 1.04A, in particular, sensory or reflex loss as well as a positive straight-leg raising test, or that testing supported a finding that he had an equivalent impairment.

## Conclusion

For the reasons stated above, the Court denies plaintiff's motion for summary judgment [docket no. 17 & 18 ] and grants defendant's motion for summary judgment

[docket no. 19] and directs the Clerk to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 3, 2012